1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JULIAN SMOTHERS, et al.,                    No. 2:17-cv-00548-KJM-KJN

12                  Plaintiffs,                    ORDER

13           v.

14    NORTHSTAR ALARM SERVICES, LLC,

15                  Defendant.

16                This matter is before the court on the unopposed motions by plaintiffs Julian

17    Smothers and Asa Dhadda for attorneys' fees, costs and class representative enhancement, ECF

18    No. 76, and for final approval of the class settlement, ECF No. 78.  The court held a hearing on

19    December 20, 2019.  Jared Hague appeared for plaintiffs; Andrew Collins appeared for

20    defendant.  For the following reasons, plaintiffs' motions are GRANTED.

21    I.      BACKGROUND

22            A.      Procedural Background

23                The facts of this case are recounted in detail in the court's January 22, 2019 order

24    on plaintiff's motion for preliminary approval class settlement and conditional certification, and so

25    the court does not repeat them all here.  *See* Prelim. Approval Order, ECF No. 55.

26                Plaintiffs Julian Smothers and Asa Dhadda allege defendant NorthStar Alarm

27    Services, LLC ("NorthStar") violated California and federal law by not properly compensating

28

                                                1

plaintiffs and the proposed class members or providing them with mandatory wages, meal periods, rest periods, reimbursements and accurate wage statements. *See* Proposed Second Am. Compl., ECF No. 45. On February 3, 2017, plaintiffs filed this putative wage and hour class action complaint in state court alleging NorthStar violated various provisions of the California Labor Code and the federal Fair Labor Standards Act ("FLSA"), Compl., ECF No. 1-1, and NorthStar removed the action to this court on March 14, 2017. *See* Notice of Removal, ECF No. 1. Following "approximately two years of intense litigation," and a mediation with Hon. Jeffrey Winikow (Ret.), "a former judge and experienced wage and hour class action mediator," the parties reached a settlement agreement. Mot. for Final Approval ("Mot."), ECF No. 78, at 8, 10; *see also* Jared Hague Decl., Ex. 1 ("Preliminary Settlement"), ECF No. 39-2, at 11–52.

On February 23, 2018, plaintiffs filed a motion for preliminary approval of the joint stipulation for class settlement and conditional certification of the class. Mot. for Prelim. Approval, ECF No. 39. The court held a hearing on the motion and raised several concerns about the settlement terms. ECF No. 43. At hearing, the court directed the parties to make their mediation briefs available for the court to review, as well as a second amended complaint, which they did. *See* Guzman Decl., ECF No. 45 (attaching Proposed Second Am. Compl.). The court conducted an *in camera* review of the parties' confidential mediation briefs and the mediator's global settlement proposal. Prelim. Approval Order at 3 n.4. On January 22, 2019, the court issued an order granting the motion for preliminary certification of the Rule 23 class and the FLSA group, but denying the motion for preliminary approval of the settlement. *Id.*

On April 9, 2019, plaintiff filed a renewed motion for preliminary approval of the settlement, Renewed Mot., ECF No. 60, and the court held a hearing on the motion on May 17, 2019, ECF No. 64. In the renewed motion, the parties proposed an amended settlement that addressed the court's previous concerns regarding the settlement terms. *See* Order on Renewed Mot., ECF No. 67, at 2 (listing modifications and finding "the parties have addressed the court's concerns expressed in its earlier order"). Accordingly, the court granted plaintiff's renewed motion for preliminary approval of the settlement. *Id.*

/////

2

However, the court also identified several issues with the proposed class notice plan, class notices and opt-out forms, and directed the parties to implement certain changes before the court would approve the proposed method of notice to the class. *Id.* at 3–16. Plaintiffs made the changes and filed copies of the amended class notices and opt-out forms. ECF No. 68. Satisfied with these changes, the court approved the class notice plan on August 12, 2019. Order on Notice, ECF No. 70.

After following the notice procedure ordered by this court, plaintiffs now move the court for an order granting certification and final approval of the joint stipulation for class settlement. Mot. at 2. Relatedly, plaintiffs also move for attorneys' fees, costs and an enhancement award for the named plaintiffs, as stipulated in the settlement. Fees Mot., ECF No. 76, at 2. On December 2, 6 and 19, 2019, plaintiff filed several supplemental declarations, primarily to notify the court of the final number of individuals who opted in to the FLSA Group and adjust the relevant figures accordingly. *See* ECF Nos. 80–84. Since the hearing, plaintiffs have also filed a motion for a status conference, ECF No. 89, and an ex parte application for immediate entry of an order granting the motion for final approval of the class settlement, ECF No. 90.

B.    Settlement Agreement

The details of the proposed settlement agreement and subsequent amendments are laid out in the court's previous orders on the motion for preliminary approval, ECF No. 55, and on the renewed motion for preliminary approval, ECF No. 67. As in the proposed settlement at the preliminary approval stage, the settlement proposed here includes the same modifications the court encouraged and preliminarily approved: class counsel's request for attorneys' fees will not exceed 25 percent of the gross settlement amount and will be subject to a lodestar cross-check, as opposed to coming in at the 33.33 percent previously sought, Mot. at 12; Settlement, ECF No. 78-1, at §§ I.11, I.26, IV.7 ("[T]he fee portion shall not exceed one-fourth of the sum of the California Class Gross Settlement Amount and the FLSA Actual Gross Participation Amount[.]"); actual settlement administration costs of $30,000, as opposed to the maximum of $50,000 previously sought, Mot. at 23; Elizabeth Kruckenberg Decl. ¶ 19, ECF No. 78-4; and the proposed notice and opt-in procedures for the FLSA group now comply with 29 U.S.C. § 216(b)'s opt-in requirement rather

than having group members opt in by cashing a settlement check. Mot. at 11. The parties have also eliminated provisions permitting funds to revert to NorthStar depending on the proportion of class members who opt out or opt in, depending on the class. *Id.* at 12; Settlement §§ VII.1 ("The entirety of the final California Class Net Settlement Amount shall be distributed to the participating class members, with no reversion to Defendant."), VII.5 (calculating FLSA gross settlement amount based on number of members who opt in).

### 1. Proposed Classes

Given significant differences between Rule 23 class actions and FLSA collective actions, the parties' settlement agreement proposes two settlement classes with separate settlement funds, both spanning the same February 3, 2013 through December 31, 2017 class period. *See* Settlement §§ I.3; Fed. R. Civ. P. 23(a)–(b), (e); 29 U.S.C. § 216(b) (FLSA penalties).

The parties propose the following class definitions:

> 'California Class': All current and former non-exempt Alarm Installation Technicians and Lead Alarm Installation Technicians who performed compensable work for Defendant in the State of California at any time from February 3, 2013 through December 31, 2017, who do not timely opt out of the California Class and the Settlement. Defendant represents by its execution of the Settlement that there are 94 individuals who fall within the definition of the California Class . . . .

Settlement § I.3.a.

> 'FLSA Group': All current and former non-exempt Alarm Installation Technicians and Lead Alarm Installation Technicians who performed compensable work for Defendant in the United States at any time from February 3, 2014 through December 31, 2017, who affirmatively opt in to the FLSA Group and the Settlement by timely returning to the Settlement Administrator the Court-approved opt-in form. Defendant represents by its execution of the Settlement that there are 285 individuals who potentially fall within the definition of the FLSA Group [.]

*Id.* § I.3.b. No California Class members have opted out of the settlement, therefore all 94 individuals identified at the preliminary approval stage are considered participating California

/////

Class members. Mot. at 11. A total of 169 individuals have opted in to the FLSA Group.[1] Kruckenberg Suppl. Decl. ¶¶ 2–3.

### 2. Gross Settlement Amount

Under the Agreement, NorthStar will make a payment of up to $1.8 million to the settlement administrator, which will be adjusted based on the number of potential FLSA Group members who opt in to the settlement. Settlement §§ I.10 ("The 'California Class Gross Settlement Amount' is $800,000.00."), I.25 ("The 'FLSA Potential Gross Settlement Amount' is $1,000,000."), VII.5 ("Calculation of the FLSA Actual Gross Settlement Amount"). The potential gross settlement amount for the FLSA Group is $1 million, if all potential members opted-in. Settlement §§ I.25, VII.5. Based on the number of opt-ins, the FLSA Actual Net Settlement Amount is $509,184.77. Kruckenberg Decl. ¶ 7, ECF No. 81. The proposed gross settlement amount for the California Class, which is fixed, is $800,000. Settlement § I.10. The parties propose the following allocation of the potential $1.8 million gross settlement amount:

> (1) Up to $450,000, 25 percent of the potential gross settlement, for class counsel as attorneys' fees, and up to $20,000 for costs and expenses. *Id.* § IV.7. Any difference in the amount actually awarded will revert to the California Class Net Settlement Amount and FLSA Potential Net Settlement Amount pro rata, for distribution to the FLSA group and to the California Class. *Id.*

> (2) Up to $10,000 in enhancement payments for each named plaintiff. *Id.* § IV.2. Any difference in the amount actually awarded will revert to the California Class Net Settlement Amount and FLSA Potential Net Settlement Amount pro rata, for distribution to the FLSA group and to the California Class. *Id.*

> (3) No more than $50,000 in administrative expenses paid to the claims administrators. *Id.* § VI.1. If expenses are less than $50,000, the excess will be added to the net settlement amounts prior to distribution to group and class members, as described above. *Id.*

> (5) An allocation of up to $37,500 from the California Gross Settlement Amount to the California Labor and Workforce

---

[1] After plaintiffs provided updated figures regarding the FLSA Group for the court, one additional individual opted into the FLSA Group, bringing the total to 169. Kruckenberg Suppl. Decl. ¶ 3, ECF No. 83. Because this addition would only negligibly affect the relevant figures, the court did not request additional briefing on the subject, and uses the numbers provided by plaintiffs when the total FLSA Group consisted of 168 opt-ins.

Development Agency as a California Private Attorneys General Act of 2004 ("PAGA") penalty. *Id.* §I.15.

(6) Any applicable tax withholding required. *Id.* § IV.5.

*See also id.* § VII.1–2.

### 3. Non-Monetary Settlement

The settlement also includes non-monetary terms, including NorthStar's agreement to make changes to its compensation practices. *Id*. § IV.4. These changes include requiring NorthStar to pay Alarm and Lead Alarm Installation Technicians at least California minimum wage and overtime wages for all hours worked; posting and distributing meal and rest period bulletins; modifying on-call policies applicable to California Alarm and Lead Alarm Installation Technicians so those employees are not required to monitor their phones during off-duty hours or during meal and rest periods; and reimbursing California Alarm and Lead Alarm Installation Technicians for reasonable business expenses, including reimbursement for required tools and for work-related travel conducted in personal vehicles at the IRS mileage rate. *Id.*

On March 19, 2018, as required under the parties' settlement terms, NorthStar filed a declaration confirming it has taken all non-monetary action required under the Settlement. ECF No. 41.

## II. CLASS CERTIFICATION

### A. California Class

Plaintiffs seek final certification of the proposed California Class for settlement approval under Rule 23. Mot. at 2. Rule 23 permits class action settlements "only with the court's approval" following "a hearing and only on a finding" that the agreement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P 23(e). Proposed class action settlements are reviewed in two stages, requiring two hearings. First, the court conducts a preliminary fairness analysis and, if necessary, a preliminary class certification analysis, which this court conducted in its order granting preliminary certification of the class, ECF No. 55. *See* Ann. Manual for Complex Litigation (4th ed., May 2019) ("MCL"), § 21.632; *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Second, after all absent class members are notified of the certification and

6

proposed settlement, the court holds a final fairness hearing where it revisits class certification and determines whether to approve the settlement. MCL §§ 21.632–21.635; *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1267 (9th Cir. 2010) (requiring fairness hearing before final approval of settlement).

Class certification in the settlement context is appropriate only if Rule 23's certification requirements are satisfied. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (court owes "undiluted, even heightened, attention" to class certification requirements in settlement context); Fed. R. Civ. P. 23(c)(1) advisory committee's note to 2003 amendment ("A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."). On January 22, 2019, the court preliminarily certified the proposed class, finding the class satisfied the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23(a), Prelim. Approval Order at 7–10, as well as the predominance and superiority requirements of Rule 23(b)(3), *id.* at 10–12.

No party or class member has objected to certification of the settlement class, Mot. at 22, and there is nothing before the court to suggest this prior certification was improper. The court therefore finds certification of the class for the purpose of final approval of the settlement agreement is appropriate.

B.    The FLSA Group

The FLSA establishes an opt-in collective action procedure for employees allegedly denied wages and overtime pay. *See* 29 U.S.C. § 216(b). Under the FLSA, "one or more employees" may file a civil action "on behalf of himself or themselves and other employees similarly situated." *Id.* For the same reasons discussed in the court's order preliminarily certifying the FLSA Group, the court finds the potential FLSA Group members here are similarly situated and certifies the group for the purpose of settlement. *See* Prelim. Approval Order at 13–15.

III.    FINAL SETTLEMENT APPROVAL

As the court explained at the preliminary approval stage, under Rule 23(e), a class action may be settled "only with the court's approval," and the court may provide such approval "only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ.

7

P. 23(e).  To determine whether a proposed class action settlement is fair, reasonable and

adequate, courts consider several factors, as relevant, including:

> (1) [T]he strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *In re*

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946).  These factors substantively track those

provided in the 2018 amendments to Rule 23(e)(2), which took effect December 1, 2018.  Rule

23(e) now dictates that a court may approve a settlement only after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The advisory note to the Rule 23(e)(2) amendment recognizes, "each

circuit has developed its own vocabulary for expressing these concerns" regarding whether a

proposed settlement is fair, reasonable and adequate.  Fed. R. Civ. P. 23(e)(2) advisory

committee's note to 2018 amendment.  Accordingly, the newly codified factors are not intended

"to displace any factor, but rather to focus the court and the lawyers on the core concerns of

procedure and substance that should guide the decision whether to approve the proposal." *Id.*; *see*

*also* 4 Newberg on Class Actions § 13:14 (5th ed. 2019) (noting Rule 23(e) "essentially codified

[federal courts'] prior practice").  Moreover, the Advisory Committee warned against allowing "[t]he sheer number of factors [to] distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.  Accordingly, the court draws on the Ninth Circuit's longstanding guidance as well as the Rule 23(e)(2) factors in determining whether the settlement is "fair, reasonable, and adequate."

Similarly, "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court."  *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (citing *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013)).  In the absence of Supreme Court or Ninth Circuit guidance, district courts in this circuit often apply the Eleventh Circuit's standard in evaluating FLSA settlements, assessing whether the settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Jefferson v. MEC Dev., LLC*, No. 1:17-CV-01394, 2019 WL 5209149, at *3 (E.D. Cal. Oct. 16, 2019) (quoting *Lynn's Food Stores, Inc. v. United States by & through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982)).  "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'"  *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (citation omitted).  "Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions."  *Maciel v. Bar 20 Dairy, LLC*, No. 117CV00902 DAD SKO, 2018 WL 5291969, at *4 (E.D. Cal. Oct. 23, 2018) (citation omitted); *see, e.g.*, *Almodova v. City & Cty. of Honolulu*, No. CV 07-00378 DAE-LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010) (applying following factors: strength of plaintiff's case; risk of further litigation; stage of proceedings; expense, complexity and duration of further litigation; amount offered in settlement; experience and views of counsel; and plaintiffs' reaction to settlement), *report and recommendation adopted*, No. CIV.0700378-DAE-LEK, 2010 WL 1644971 (D. Haw. Apr. 20, 2010).  Here, there is a bona fide dispute over defendant's FLSA liability for the reasons laid out

in plaintiffs' motion for preliminary approval of the settlement.  Mot. for Prelim. Approval at 18

("The Parties strongly dispute whether the FLSA Group Members' earnings, even [if] averaged,

would have sufficiently compensated them for the overtime hours they worked.") (citing *Douglas*

*v. Xerox Business Services, LLC*, 875 F.3d 884 (9th Cir. 2017)).  The court addresses the Rule 23(e)

factors below.

A.    Class Representatives and Class Counsel Have Adequately Represented Class

The court concluded the two named plaintiffs and their counsel were likely to "fairly

and adequately protect the interests of the class" when it preliminarily approved the California

Class for settlement.  Prelim. Approval Order at 10.  The record at this stage provides no reason to

doubt that conclusion, which applies equally to the FLSA Group.  *See, e.g.*, Julian Smothers Decl.

¶¶ 3–4, ECF No. 79 (describing extensive involvement in case and advocacy for class members'

interests); Sutton Decl. ¶¶ 3–14, ECF No. 76-1 (describing experience of class counsel); Hague

Decl. ¶¶ 3–12, ECF No. 76-2 (describing experience of class counsel and involvement of named

plaintiffs).

B.    Proposal Negotiated at Arm's Length

In its Preliminary Approval Order, the court also considered whether the proposed

settlement "appear[ed] to be the product of serious, informed, non-collusive negotiations[.]"

Prelim. Approval Order at 16 (quoting *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D.

Cal. 2016)).  The court was satisfied the settlement was the product of an arms-length negotiation,

especially given that the parties participated in a private mediation with a former judge, left

mediation without reaching a settlement, but remained in constant contact and ultimately accepted

the mediator's proposal.  *Id.* at 21–22 (citing *Pierce v. Rosetta Stone, Ltd.*, No. C 11–01283 SBA,

2013 WL 1878918, at *5 (N.D. Cal. 2013) (means by which parties reached proposed settlement

bears on its reasonableness and fairness)).  For these same reasons, the court finds this factor

supports approving the settlement at this stage.

C.    Relief Provided for Class Is Adequate

In analyzing the adequacy of the relief at the preliminary approval stage, the court

called out several "subtle signs of unfairness" that suggested relief might be inadequate: (1) a

disproportionate award to counsel, (2) a "clear sailing" arrangement for attorneys' fees, and (3) arrangements where fees not awarded revert to defendant rather than the class fund. *See id.* at 22 (citing *In re Bluetooth*, 654 F.3d at 947). Here, after the parties amended their settlement in line with the court's suggestions, attorneys' fees are now capped at the Ninth Circuit's presumptively appropriate 25 percent benchmark, *see In re Easysaver Rewards Litig.*, 906 F.3d 747, 754 (9th Cir. 2018), so are not obviously disproportionate, and there is no reversionary provision, *see* Settlement § VII.1 ("The entirety of the final California Class Net Settlement Amount shall be distributed to the participating California Class Members, with no reversion to Defendant.").

However, there remains a "clear sailing" arrangement for attorneys' fees, wherein NorthStar "agrees not to object to [attorneys'] fee, cost or expense applications" that do not exceed the amount laid out in the settlement. *See* Settlement § IV.7.[2] As foreshadowed in its previous order, the court must therefore conduct "a lodestar cross-check" to determine whether the attorneys' fees request is reasonable. Prelim. Approval Order at 22 (citing *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 352 (E.D. Cal. 2014)). The court engages in the lodestar cross-check analysis in the discussion on plaintiffs' motion for attorneys' fees below, and ultimately determines the request is reasonable. Therefore, the "clear sailing" provision is not a bar to final approval of the settlement.

At the preliminary stage, the court also found the settlements' provisions for providing notice to the class were inadequate. *See* Prelim. Approval Order at 16–20. The parties amended the FLSA notice and opt-in procedures in light of the court's first order on preliminary approval, ECF No. 55, and second order on plaintiffs' renewed motion, ECF No. 67, and the court preliminarily approved the amended settlement. Order on Notice at 2. The court remains satisfied with plaintiffs' method of providing notice to the California Class members and the FLSA Group members, especially given that over 59 percent of the FLSA Group members opted in to the settlement by submitting a claim form. *See* Mot. at 8.

---

[2] "Defendant agrees not to object to any such fee or expense application in those amounts. . . . The Parties agree that any fee and/or expense application by Class Counsel will include a request that the Court analyze requested fees using a lodestar cross-check . . . ."

For these reasons, and taking into account the remaining sub-factors under Rule 23(e)(2), the court finds the settlement provides adequate relief to the class as it did when it preliminarily approved it. *See* Order on Renewed Mot.

### D. Proposal Treats Class Members Equitably Relative to Each Other

The individual settlement amount for each California Class member will be determined by dividing the final California Class Net Settlement amount by the total number of workweeks worked by all California Class members to yield the "final California Class pay period rate." Settlement § VII.4. "Each member of the California Class shall be paid an amount equal to the number of his or her individual pay periods worked during the Class Period multiplied by the final California Class pay period rate." *Id.* The FLSA Group members' individual settlement amounts will be determined in a similar way, by dividing the final FLSA Potential Net Settlement Amount by the total number of workweeks worked by all potential members of the FLSA group, to yield the "final FLSA Group pay period rate." *Id.* Each individual who opts in to the FLSA settlement will be eligible for "an amount equal to the number of his or her individual pay periods worked during the Class Period multiplied by the final FLSA Group pay period rate." *Id.* The court finds this method of distribution treats class members equitably relative to each other.

The settlement treats the named plaintiffs differently than the other class members, by affording them each a $10,000 incentive payment. Fees Mot. at 15. The court analyzes this incentive payment separately below, but ultimately determines it is not a barrier to approving the settlement.

### E. Conclusion

For these reasons the court finds the settlement is "fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e).

## IV. ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD

### A. Request for Attorneys' Fees

"Where a proposed settlement of FLSA claims includes the payment of attorneys' fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180 (citation omitted); *see also* 29 U.S.C. § 216(b) (2018) (in FLSA action, court shall "allow a

reasonable attorneys' fee to be paid by the defendant, and costs of the action"). "The district court has discretion in common-fund cases to award attorneys' fees in the amount of a percentage of the common-fund or using the lodestar method." *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 4570190, at *2 (N.D. Cal. Dec. 21, 2007).

Rule 23 also permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Even when the parties have agreed on an amount, the court must award only reasonable attorneys' fees. *Bluetooth*, 654 F.3d at 941.

### 1.  Ninth Circuit Benchmark

The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees, and "courts may adjust this figure upwards or downwards if the record shows special circumstances justifying a departure." *Ontiveros v. Zamora*, 303 F.R.D. 356, 372 (E.D. Cal. 2014) (internal quotation marks omitted) (citing *In re Bluetooth*, 654 F.3d at 942). The Ninth Circuit has also approved the use of lodestar cross-checks to determine the reasonableness of a particular percentage recovery of a common fund. *Seguin v. Cty. of Tulare*, No. 116CV01262DADSAB, 2018 WL 1919823, at *6 (E.D. Cal. Apr. 24, 2018) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)).

The proposed settlement provides for attorneys' fees of $200,000 attributable to the California Class, which is 25 percent of the California Class Gross Settlement Amount. Sutton Suppl. Decl. ¶ 5, ECF No. 82. Taking into account the actual number of FLSA opt-ins, the proposed settlement would provide for $178,150.46 attributable to the FLSA Group, which is 25 percent of: the FLSA Potential Gross Settlement Amount ($1,000,000) multiplied by the FLSA Participation Rate, a figure that represents the percentage of available funds actually claimed by individuals who opted in. *See id.* ¶ 7. Both these amounts are presumed reasonable as they are in line with the Ninth Circuit's benchmark and consistent with awards in similar cases. *See, e.g.*, *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802-PSG (PLAx), 2015 WL 9664959, at *10 (C.D. Cal. Aug. 4, 2015) (approving attorneys' fees of 30 percent of settlement fund in hybrid state-law class action and FLSA collective action); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 457 (9th Cir.

2009) (approving attorneys' fees of 25 percent of settlement fund in common-fund case involving state-law and FLSA claims).

### 2. Lodestar Cross-Check

Comparison with the lodestar method also supports approval here. In cases where courts apply the percentage method to calculate attorneys' fees, courts are encouraged to use the lodestar method as a cross-check to evaluate the reasonableness of the percentage award. *See Bluetooth*, 654 F.3d at 943–45. In calculating an attorneys' fees award under this method, a court "must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citation omitted). This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Bluetooth*, 654 F.3d at 941–42 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). "Foremost among these considerations, however, is the benefit obtained for the class." *Id.* at 942 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)).

### a. Lodestar Amount

As part of their separate motion for attorneys' fees, class counsel have provided the following breakdown of their time spent in this case and their regular rates per hour:

| Attorney | Hours Worked | Rate | Total Fees |
|----------|-------------|------|-----------|
| S. Brett Sutton | 120.65 | $800.00 | $96,520 |
| Jared Hague | 188.60 | $650.00 | $122,590 |
| Anthony E. Guzman | 304.05 | $300.00 | $91,215 |
| Brady Briggs | 40.50 | $300.00 | $12,150 |
| **Totals** | 653.80 | | $322,475 |

14

S. Brett Sutton Suppl. Decl. ¶ 11. Counsel have also provided declarations in support of their hourly rates, but no evidence their rates are in line with those in the community, *see Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), nor itemized records to support the number of hours they worked, *see Hensley*, 461 U.S. at 437. Nonetheless, in this case the court finds counsel has provided adequate detail to conduct a lodestar cross-check here. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) ("Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours." (citation omitted)); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (citation omitted)). Given the extent of motion practice in this case, including a motion to amend the complaint, ECF No. 28, a motion to certify the class, ECF No. 33, a motion for conditional certification of the class and preliminary approval of the settlement, ECF No. 39, a renewed motion for preliminary approval of the settlement, ECF No. 60, and the instant motions for final approval of the settlement and for attorneys' fees, ECF Nos. 78, 76, as well as the time required for mediation, the court finds 653.80 is a reasonable number of total hours to use for the lodestar cross-check.

Brady Briggs and Anthony E. Guzman are both associates with roughly three years of experience at the time the instant motion as filed. Sutton Decl. ¶¶ 19–20. Courts in the Eastern District have previously accepted hourly rates between $370 and $495 for associates, though lower rates are more commonly approved. *Milburn v. PetSmart, Inc.*, No. 118CV00535 DAD SKO, 2019 WL 5566313, at *8 (E.D. Cal. Oct. 29, 2019) (noting courts using the loadstar method have previously accepted hourly rates of between $370 and $495 for associates, but some courts in this district approved lower rates) (citing, *inter alia*, *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *22 (E.D. Cal. July 12, 2012) (awarding $300 per hour for associates with less than four years' experience)). Given the other discussions in this district, the court finds the proposed rate of $300 is a reasonable hourly rate for associates Brady Briggs and Anthony E. Guzman.

That said, the rates proposed by plaintiffs, namely $650 and $800 for partners, are high for this district. As noted in the one federal case plaintiffs cite, "'prevailing hourly rates in the Eastern District of California are in the $400/hour range,' with some courts noting a higher range for partners, commensurate with experience." *Turk v. Gale/Triangle, Inc. et al.*, Case No. 2:16-cv-00783-MCE-DB, ECF No. 33 at 8–9 (E.D. Cal. Sept. 21, 2017) (quoting *Bond v. Ferguson Enterprises, Inc*., 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011)) (citing, *inter alia*, *Franco v. Ruiz Food Products, Inc.*, 1:10-CV-02354-SKO, 2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012) ("[P]revailing rates in the Eastern District of California are in the $400 range, with rates of up to $650 to $675 approved for partners and senior associates with significant years of experience.")); *see also Z.F. v. Ripon Unified Sch. Dist.*, No. 2:10-cv-00523-TLN-CKD, 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017) ("Prevailing hourly rates in the Eastern District of California are in the $350–$550/hour range for experienced attorneys with over 15 years of experience in civil rights and class action litigation." (citation omitted)).

In particular, Jared Hague proposes a rate of $650 per hour for his time, and he has over 11 years of experience as an attorney, primarily in employment and labor law. Hague Decl. ¶ 3. In a recent case from this district out of Fresno, a sister court declined to use a rate of $510 per hour for an associate with 11 years of experience in a wage-and-hour class action, and instead reduced the rate to $495 per hour to "more appropriately reflect market rates in this district." *Milburn*, 2019 WL 5566313, at *10. Even though Mr. Hague is a partner at his firm, $495 per hour is a reasonable rate for lodestar purposes, in light of other decisions awarding even lower rates to attorneys with much more experience in the Sacramento Division of this district. *See, e.g.*, *Celestine v. FCA US LLC*, No. 2:17-CV-0597-JLT, 2019 WL 4274092, at *13 (E.D. Cal. Sept. 10, 2019) (reducing requested rate to $300 per hour for an attorney with approximately 16 years of experience, applying standard for Sacramento Division); *Estrada v. iYogi, Inc.*, 2016 WL 310279, at *6 (E.D. Cal. Jan. 26, 2016) (approving $400 requested rate for partners with as much as 19 years of experience). Accordingly, the court applies a rate of $495 per hour for Mr. Hague's time, which reduces his total fees for the lodestar calculation to **$93,357**.

/////

S. Brett Sutton has nearly 30 years of experience as an attorney and has served as lead counsel on many wage-and-hour class actions. Sutton Decl. ¶¶ 3, 6. In *Milburn*, the court also declined to use the rate of $700 for an attorney with over 33 years of experience in wage-and-hour class actions, and instead applied the "upper range of hourly rates previously found to be reasonable in this district," $695 per hour. *Milburn*, 2019 WL 5566313, at *9; *see also Celestine v. FCA US LLC*, No. 2:17-CV-0597-JLT, 2019 WL 4274092, at *11 (E.D. Cal. Sept. 10, 2019) ("[T]he Sacramento Division and Fresno Division award comparable rates."). The court will do the same here. This reduces Mr. Sutton's total fees for the lodestar calculation to **$83,851.75**, and the total lodestar amount, after reducing both Mr. Sutton's and Mr. Hague's fees, to **$280,573.75.**

To reach plaintiffs' counsel's total requested fee of **$378,150.46** requires applying a multiplier of roughly **1.35** to the lodestar amount of **$280,573.75**. A multiplier of 1.35 is within the range of multipliers accepted by the Ninth Circuit. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050–51, 1051 n.6 (reviewing approved fees from 24 cases and finding 20 of 24 fell within 1.0–4.0 range, and 13 of twenty-four fell within 1.5–3.0 range) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.")). The court evaluates the factors discussed in *Bluetooth* to determine whether a 1.35 lodestar multiplier is justified in this case. *See Bluetooth*, 654 F.3d at 941–42 (citing relevant factors as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment").

b. *Bluetooth* Factors

First, class counsel avoided protracted litigation by successfully negotiating a settlement and has diligently pursued approval of that settlement by this court through multiple rounds of motion practice. This factor supports a modest positive multiplier.

Second, and most importantly, class counsel achieved a favorable result and generated a significant benefit for the class in the form of a potential gross settlement amount of $1,800,000. Mot. at 11; *see Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."). Participating California class members stand to

17

receive an average award of approximately $5,653.09 and participating FLSA class members stand to receive an average award of approximately $3,144.02, a substantial benefit compared to other settlements of this type. *See* Kruckenberg Decl. ¶¶ 16–17. In addition, counsel "obtained significant value for the Settlement Class in the form of changes to Defendant's workplace policies, practices and procedure" including future compliance with state minimum wage and overtime laws and modifications to its on-call policies so employees are not required to monitor their phones during off-duty hours or meal and rest periods. Fees Mot. at 7. As further evidence of a favorable result, counsel points to the fact they have received no opt outs or objections to the settlement from potential class members. *Id.* at 8. This factor strongly favors a positive multiplier.

As for the third factor, nothing in the record suggests the issues presented by plaintiffs' claims are novel to counsel or that they were particularly complex compared with other wage-and-hour class actions. This factor does not favor a positive multiplier.

Finally, class counsel have represented the class on a contingency basis. *Id.* at 9. Consequently, they have faced a substantial risk of nonpayment, especially in light of the constantly evolving legal landscape. *Id.* at 8–9 (citing *Douglas*, 875 F.3d at 884 (holding employers may average total weekly earnings of employees to determine whether employer has satisfied its minimum wage and overtime obligations); *Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App. 5th 444, 474 (Ct. App. 2019), *as modified on denial of reh'g* (Oct. 10, 2019) (finding derivative penalties such as attorneys' fees unavailable for actions brought under Cal. Labor Code § 226.7), *petition for review granted* (Jan. 2, 2020). This factor favors a positive multiplier.

Three of the four factors favor a positive multiplier, and the multiplier of 1.35 is within the range accepted by the Ninth Circuit. Accordingly, based on the percentage-based method and the lodestar cross-check method, the court finds the requested award of fees is reasonable.

B. <u>Request for Costs</u>

The court also must determine an appropriate award of costs and expenses. Fed. R. Civ. P. 23(h). "[I]n evaluating the reasonableness of costs, the judge has to step in and

play surrogate client." *In re Toys R Us-Delaware, Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468–69 (C.D. Cal. 2014) (internal quotation marks and citation omitted). "In keeping with this role, the court must examine prevailing rates and practices in the legal marketplace to assess the reasonableness of the costs sought." *Id.* (citation omitted).

Here, counsel represents that combined unreimbursed costs total $13,822.30,[3] and include filing fees, court reporter and transcript fees, expert fees, travel costs to hearings and mediation, mediation fees, copy charges and postage charges. Fees Mot. at 14–15; Sutton Decl. ¶ 22. No class member has objected to this amount. Sutton Decl. ¶ 26 ("None of the Class Members have objected to the Settlement or opted-out of the Settlement on any basis."). The court finds these fees are reasonable and are of the type routinely approved by courts for reimbursement. *See Barbosa*, 297 F.R.D. at 454 (costs associated with travel, photocopying and mediation fees are "routinely reimbursed"); *Fontes v. Heritage Operating, L.P.*, No. 14-cv-1413-MMA (NLS), 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016) (approving class counsel's costs, which included "court filing fees, research costs, mediation-related expenses, attorney services costs, and travel expenses").

C. <u>Incentive Award</u>

The two named plaintiffs request roughly $10,000 each as incentive awards. Fees Mot. at 15. Representative plaintiffs, as opposed to designated class members, are eligible for reasonable incentive payments. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Whether to authorize an incentive payment to a class representative is a matter within the court's discretion. *See Adams v. City & Cty. of Honolulu*, No. CV 12-00667 BMK, 2017 WL 3880651, at *1 (D. Haw. Sept. 5, 2017). In determining whether to approve an enhancement payment, courts may consider the following factors: (1) "the risk to the class representative in commencing suit, both financial and otherwise;" (2) "the notoriety and personal difficulties encountered by the class representative;" (3) "the amount of time and effort spent by the class representative"; (4) "the duration of the

---

[3] Plaintiffs explained that, "[t]o the extent that Class Counsel incurs additional costs between the filing of this Motion and the filing of their Motion for Final Approval of Settlement, Class Counsel will submit additional declarations in support of such request." Fees Mot. at 15. Plaintiffs have made no such request.

litigation;" and (5) "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citation omitted). Various courts in this circuit, including this court, have adopted the *Van Vranken* factors. *See, e.g., Zakskorn v. Am. Honda Motor Co., Inc.*, 2:11-CV-02610-KJM, 2015 WL 3622990, at *17 (E.D. Cal. June 9, 2015). In determining the amount of time and effort spent by the class representative, the court will examine "'evidence demonstrating the quality of plaintiff's representative service,' such as 'substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs.'" *Flores v. ADT LLC*, No. 116CV00029 AWI JLT, 2018 WL 6981043, at *1 (E.D. Cal. Mar. 19, 2018) (quoting *Reyes v. CVS Pharmacy*, Inc., No. 1:14-CV-00964-MJS, 2016 WL 3549260, *15 (E.D. Cal. June 29, 2016)). Courts will also consider the "proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947.

Here, plaintiffs Julian Smothers and Asa Dhadda have submitted two identical declarations in which they explain their participation in the case and estimate that they each spent over 100 hours assisting counsel over the two years this case has been active. Smothers Decl. ¶¶ 3–4; Dhadda Decl. ¶¶ 3–4, ECF No. 78-3. They both "participated extensively in the preparation of the Complaint," organized and shared documents with counsel, assisted in settlement negotiations, fielded calls from potential class members inquiring about the case, and communicated often with counsel regarding the status of the case. Smothers Decl. ¶ 3; Dhadda Decl. ¶ 3.

With respect to the first factor, plaintiffs contend that, by initiating this case, they accepted some degree of personal risk, including potentially compromising future employment by suing their employer. Smothers Decl. ¶ 5; Dhadda Decl. ¶ 5. Thus, the first factor weighs in favor of granting an incentive award.

As for the second factor, nothing in the record suggests the litigation gained any particular notoriety and plaintiffs do not suggest their participation caused any personal

/////

difficulties, apart from costing them time.  Therefore, the second factor does not necessarily support an incentive award.

As for the third factor, as mentioned, both plaintiffs estimate they spent over 100 hours assisting in this litigation.  Smothers Decl. ¶ 3; Dhadda Decl. ¶ 3.  Because plaintiffs expended significant efforts and were involved in the litigation, this factor weighs in favor of granting each an incentive award.

With respect to the fourth factor, this case was somewhat protracted: plaintiffs initiated the case on February 3, 2017, settled on January 26, 2018, and requested preliminary approval on February 23, 2018.  The court subsequently denied the motion for preliminary approval in part, and the parties engaged in further motion practice until plaintiffs filed the final motion to approve the settlement on November 22, 2019, ECF No. 60, roughly four years after filing the complaint.  Thus, the fourth factor weighs slightly in favor of granting an incentive award.  *Cf. Van Vranken*, 901 F. Supp. at 296, 299 (where the class representative's "participation lasted through [roughly thirteen] years of litigation," a $50,000 incentive award was appropriate); *see also Ogbuehi*, 2015 WL 3622999, at *14 (finding fourth factor neutral where litigation settled after roughly one year).

Finally, with respect to the fifth factor, the personal benefit enjoyed by plaintiff, neither named plaintiff appears to gain any benefit beyond what he will gain as a class member.  *See generally* Settlement; *see also In re Toys R Us-Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. at 472 ("An incentive award may be appropriate when a class representative will not gain any benefit beyond that he would receive as an ordinary class member.").  This factor weighs in favor of granting an incentive award.

On balance, the relevant factors favor granting an incentive award.  The requested incentive award of $10,000 is on the high end of what is typically approved, but not out of line with precedent, especially given the number of hours plaintiffs spent in this case.  S*ee, e.g., Bond*, 2011 WL 2648879, at *2, 15 (approving an $11,250 incentive payment to each of two named plaintiffs as part of $2,250,000 gross settlement); *Emmons v. Quest Diagnostics Clinical Laboratories, Inc.*, 2017 WL 749018, *9 (E.D. Cal. Feb. 27, 2017) (awarding enhancement payment of $8,000 to each

plaintiff when each conducted 30 to 40 hours of work); *Rodriguez v. Kraft Foods Group, Inc.*, 2016 WL 5844378, *16 (awarding enhancement payment of $10,000 to plaintiff who conducted 40 hours of work on case); *Ross v. U.S. Bank Nat'l Ass'n,* Civ. No. 3:07-2951 SI, 2010 WL 3833922, at *3 (N.D. Cal. Sept. 29, 2010) (approving award of $20,000 to each of four named plaintiffs where settlement fund was $1,050,000, based on their contributions to litigation and risk that being a class representative would harm their reputation).

Furthermore, the total incentive payment of $20,000 represents roughly 1.11 percent of the potential gross settlement amount. A $10,000 incentive payment is roughly 1.77 times the average individual settlement amount for the California class and 3.18 times the average individual settlement amount for the FLSA Group. As a percentage of the potential gross settlement amount, the incentive award is on the high end of what is commonly approved, but, as compared to the average individual settlement amounts, the ratio of individual to incentive award is quite low. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947 (awarding $5,000 enhancement payment to each of nine named plaintiffs, which was roughly 417 times greater than average award but, in aggregate, only 0.17% of gross settlement); *Rodriguez*, 2016 WL 5844378, at *16 (awarding enhancement payment of $10,000, which was approximately 11 times average award and less than 0.5% of gross settlement); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (awarding an enhancement payment of $10,000, which was approximately 50 times average award and less than 0.02% of gross settlement).

On balance, the $10,000 incentive award to each named plaintiff is reasonable in this case, especially in light of plaintiffs' extensive time commitment, as laid out in their sworn declarations. *See* Smothers Decl. ¶ 3; Dhadda Decl. ¶ 3. The court approves this element of the settlement.

V.     <u>CONCLUSION</u>

In light of the foregoing analysis, plaintiffs' motion for final approval of the class settlement, ECF No. 78, and motion for attorneys' fees, costs and an enhancement award, ECF No. 76, are GRANTED. As discussed at hearing, given the court's relatively extensive involvement in

/////

this case, the court in its discretion maintains jurisdiction to enforce the terms of the parties' settlement agreement.

Plaintiffs' request for a status conference, ECF No. 89, and ex parte request for an order, ECF No. 90, are both DENIED as moot.

This order resolves ECF Nos. 76 , 78, 89 and 90. The Clerk is directed to CLOSE the case.

IT IS SO ORDERED.

DATED: March 30, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE